# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*<br><br>v.<br><br>ANTOINE HARRIS,<br><br>*Defendant.* | Crim. Action No.: 3: 14-cr-00434 (PGS)<br><br>**MEMORANDUM<br>AND ORDER** |

This matter comes before the Court by way of a letter from the Probation Office for the District of New Jersey requesting early termination of supervised release for Defendant Antoine Harris. The Government deems the request as one from Mr. Harris himself, and the Government opposes early release because it violates the "appellate waiver" in Mr. Harris' plea agreement. In addition, the Government argues that early termination is not warranted regardless. After considering the papers and having heard from the parties by telephone on September 13, 2021, the Court grants the Probation Office's request, and grants early termination of supervised release for Mr. Harris.

## I.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 30, 2014, Mr. Harris pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin contrary to 21 U.S.C. §§ 841(a)(1)

1

and 841(b)(1)(B) in violation of 21 U.S.C. § 846. (Presentence Investigation Report ("PSR") at 4, ¶5). On August 30, 2016, this Court sentenced Mr. Harris to 33 months' imprisonment, followed by three (3) years of supervised release, forfeiture of $1,063.00, a special assessment of $100, and assorted standard and special conditions. (Criminal Judgment, ECF 170). On February 5, 2019, he completed his term of imprisonment and commenced his three years of supervised release before oversight of his supervision was transferred to the U.S. Probation Office for the District of Columbia, who accepted supervision on April 15, 2019. (André M. Wilson, October 19, 2020 United States Probation Office Memorandum ("Wilson Memo") at 1).

On October 19, 2020, Senior U.S. Probation Officer André M. Wilson of the D.C. Probation Office composed a memorandum to Susan Smalley, Chief U.S. Probation Officer for the District of New Jersey, recommending that Ms. Smalley "[a]pproach [her] court and request early termination" of Mr. Harris' supervised release. (Wilson Memo at 1-2). Mr. Wilson detailed how Mr. Harris had settled in the southeast quadrant of Washington D.C., had secured "continued employment" as a surgical technician for Howard University Hospital, maintained a valid New Jersey "operator's license," and how an October 19, 2020 criminal record check revealed no new criminal behavior. Further, Mr. Wilson noted that Mr. Harris had submitted a DNA sample, was compliant with all financial conditions, had tested negative on all drug tests, and that his monthly income from the hospital negated any need to participate in an enrichment program. (Wilson Memo at 2). The D.C. Probation Office consequently concluded that:

> According to our assessment tools, Mr. Harris is considered a low risk to engage in new criminal behavior; therefore, he is currently being supervised on our administrative caseload. Mr. Harris does not presently pose a specific risk to the community, and our office does not believe removal from supervision will result in an increase [sic] chance of a specific risk to the community.

(Wilson Memo at 2).

On August 4, 2021, Ms. Smalley, through Supervising U.S. Probation Officer Sharon A. O'Brien, submitted a letter to the Court relaying the D.C. Office's "request[ for] early termination of supervised release" and representing that "[Mr. Harris] does meet the minimal criteria for early termination." (Sharon A. O'Brien, August 4, 2021 United States Probation Office Letter ("O'Brien Letter") at 1-2). The Government filed opposition with the Court on August 17, 2021, arguing that early termination of supervision is not appropriate and that an appellate waiver in Mr. Harris' plea agreement precludes the request in the first place.

II.

## LEGAL STANDARD

Pursuant to statute (18 U.S.C. §§ 3564(c) and 3583(e)(1)), the Court may terminate probation in misdemeanor cases at any time and terms of supervised release or probation in felony cases after the expiration of one year of supervision, if satisfied, that such action is warranted by the conduct of an offender and is in the interest of justice. Sections 3564(c) and 3583(e)(1) do not require "exceptional conduct" to justify early termination, and instead, direct district courts to consider the factors at 18 U.S.C § 3553(a).

III.

## ANALYSIS

As the Government's opposition is two-fold, the Court addresses each point in turn.

I.      The Plea Agreement's Appellate Waiver

The Government first argues that Mr. Harris is barred from seeking early termination of his supervised release due to the appellate waiver in his plea agreement prohibiting appeals, collateral attacks, writs, or motions challenging his sentence. The relevant portion of Mr. Harris' plea agreement is as follows:

3

> ANTOINE HARRIS knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 27.

(Plea Agreement at 8, ¶14, ECF 163). When the Court sentenced Mr. Harris, it "activated the appellate waiver, which preclude[s] Harris from challenging his sentence in any way other than through a habeas petition alleging ineffective assistance of counsel." (Govt. Opp. at 1-2). In support of this position, the Government cites *United States v. Damon*, 933 F.3d 269 (3d Cir. 2019).

In *Damon*, the defendant pleaded guilty pursuant to a plea agreement, which included an appellate waiver identical to the one here aside from a higher offense level of 33, including imprisonment and a five-year term of supervised release. *Damon*, 933 F.3d at 270-71. During his term of supervised release, the defendant moved to terminate same after serving 32 months into his 60 month term. *Id.* The District Court found that the plea agreement waiver barred the defendant's motion and the Third Circuit affirmed, utilizing contract law standards to review validity of the agreement between the defendant and the government. *Id.* at 272. Specifically, the Third Circuit found that the defendant's motion to terminate his supervised release early fell within the scope of the waiver, that he had knowingly and voluntarily agreed to the waiver, and that enforcing the waiver would not constitute a miscarriage of justice as the plea agreement between the government and the defendant represented a set of bargained-for benefits. *Id.* at 275. Where the defendant enjoyed the benefits of the plea agreement at the time of sentencing and attempted to later reduce the supervised release segment of his sentence, he was "seek[ing] the benefits of [the agreement] without the burdens." *Id.* (quoting *United States v. Williams*, 510 F.3d 416, 422 (3d Cir. 2007). The present case, however, is distinguishable.

In *Damon*, as well as many other cases where a request for early termination of supervised release was denied due to an appellate waiver, the request came from the respective defendant, the individual who had agreed to the terms of each plea agreement and was thus bound. *See Damon*, 933 F.3d at 275; *see also United States v. Clark*, 2021 U.S. Dist. LEXIS 159376, at *2 (E.D. Pa. Aug. 24, 2021); *United States v. Laureano*, 2021 U.S. Dist. LEXIS 24401, at *1 (D.N.J. Feb. 9, 2021); *United States v. Lui*, 2021 U.S. Dist. LEXIS 12696, at *4 (D.N.J. Jan. 22, 2021); *United States v. Crews*, 2020 U.S. Dist. LEXIS 209982, at *2 (E.D. Pa. Nov. 10, 2020); *United States v. Carter*, 2014 U.S. Dist. LEXIS 68670, at *2 (W.D. Pa. May 19, 2014). In contrast, the present matter entails a request for early termination originating with the D.C. Probation Office in a memorandum subtitled "Request for Early Termination." (Wilson Memo at 1). It is noteworthy that the Probation Office is not bound by the waiver as the Government concedes. (Govt. Opp. at 2).

The Government still argues that although the "waiver is not binding on the Probation Office," the request should nonetheless be barred because "Harris likely either requested early termination from Probation or is aware of the request and will directly benefit from it. (Govt. Opp. at 2). It seems that the Government argues that from the circumstantial evidence, one can conclude Harris that requested termination.  It is difficult to make that leap. When clarifying the position of the Probation Officer, Ms. O'Brien noted that the request for early termination arose because "Mr. Harris' probation officer in [D.C.] where [Mr. Harris is] supervised thought highly of his progress" and "as a matter of practice in their district sent [the District of New Jersey Probation Office] a letter requesting the Court consider him for early termination." (Sept. 13, 2021 Phone Conference Tr. 4:4-8). In short, there is no evidence to suggest Mr. Harris initiated the request for early termination.

II.    Early Termination Eligibility

Turning now to the merits of the request, the Government asserts that early termination is not warranted as Mr. Harris' role in transporting large quantities of heroin and mere compliance with the terms of his supervision do not cause the interests of justice to weigh in his favor.

The Guide to Judiciary Policy, Vol. 8, Ch. 3, Section 3 60.20(c) endorses six criteria to determine if an offender satisfies the minimal statutory factors to be considered for early termination, as follows:

> (1) The person does not meet the criteria of a career drug offender or career criminal as described in 28 U.S.C. § 994(h) or has not committed a sex offense or engaged in terrorism; (2) The person presents no identified risk of harm to the public or victims; (3) The person is free from any court-reported violations over a 12-month period; (4) The person demonstrates the ability to lawfully self-manage beyond the period of supervision; (5) The person is in substantial compliance with all conditions of supervision; and (6) The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

*United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (quoting *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018)). If the above factors are met, the Court must consider the Section 3553 sentencing factors:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (internal citations omitted). The Court need not "make specific findings of facts with respect to each of these factors" as "a statement that [the district court] has considered the statutory factors is sufficient." *Melvin*, 978 F.3d at 52-53 (internal

6

citation omitted). The Court has done so here and finds the factors do weigh in favor of early termination.

Though Mr. Harris' role in heroin trafficking was indeed a severe offense, the Court is heavily persuaded by the memorandum from Mr. Wilson in the D.C. Probation Office. In it, Mr. Wilson noted that Mr. Harris is a minimal risk for repeat offenses, how he has abided by the terms of supervision with no violations at all mentioned, how he is self-sufficient, and how he ultimately behaved in such a way that impressed his probation officer to the point his officer recommended early termination of his own volition. The lattermost point is particularly notable in that amongst other cases entailing requests for early release, the respective probation officers may have supported early termination, but they did not initiate the requests themselves. *See United States v. Lui*, 2021 U.S. Dist. LEXIS 12696, at *5 (D.N.J. Jan. 22, 2021) (wherein the probation office opposed early termination); *United States v. McFadden*, 2017 U.S. Dist. LEXIS 1888, at *5 (D.N.J. Jan. 5, 2017) (wherein the probation office took no position on early termination); *United States v. Carter*, 2014 U.S. Dist. LEXIS 68670, at *3 (W.D. Pa. May 19, 2014) (wherein the probation officer simply had no objection to early termination).

Finally, Probation Officer have represented that Mr. Harris has benefitted to the largest extent that he could from supervision and is ready for early termination. (Govt. Opp. at 4; Wilson Memo at 2). Accordingly, the Court is satisfied with the representations before it and finds that the conduct of Mr. Harris and the interest of justice warrant early termination under 18 U.S.C. §3583(e)(1).

ORDER

For the above reasons and considerations;

IT IS on this 23ʳᵈ day of September, 2021;

ORDERED that the motion by the Probation Office to terminate supervised release of Antoine Harris is granted.

_____
Peter G. Sheridan, U.S.D.J.